# Wilson *v.* Knight *et al.*

### *Bill of Injunction.*

1. *The holder of a note secured by mortgage is regarded as a bona fide purchaser.*—A creditor who permits a debtor to substitute for his note upon which is a solvent surety, a note made by the debtor alone, secured by mortgage must be regarded as a *bona fide* purchaser, when the note is assailed as usurious by one, who is neither the personal representative of the debtor, nor his surety.

2. *A mortgagee of land does not lose his lien by taking a mortgage executed by husband and wife.*—The mortgagee of land who holds it under such circumstances as will make him a *bona fide* purchaser against the mortgagor's wife, attempting to subject the land to the payment of money belonging to her statutory separate estate, invested in it, does not lose the lien of such mortgage by taking a second mortgage executed by the husband and wife to secure the payment of their note, extending the time for the payment of the debt.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. HURIOSCO AUSTILL.

Sallie E. Wilson, a married woman, filed, by her next friend, John George, a bill of complaint in the Chancery Court of Butler county, against Thomas A. Knight and Solomon D. Wilson, praying for a writ of injunction and other relief.

The bill of complaint alleged that the complainant was married in 1867, in the State of Georgia, to Solomon D. Wilson, and was still living with him as his wife. At the time of the said marriage both the complainant and her husband were citizens of the said State, and resided therein until 1869. During their residence in the State or Georgia, the father of the complainant gave her a tract of land situated in that State. Before the removal of the complainant and her husband from Georgia to the State of Alabama the said

land was sold for eighteen hundred dollars. Of this sum one thousand dollars was paid, and the remaining eight hundred dollars was secured by a note. The father of the complainant subsequently advanced the money on the said note, and it was transferred to him. The father of the complainant died in 1870. After his death she received from his estate an additional sum of eleven hundred and forty-four 25-100 dollars.

On or about the second day of October, 1869, said Solomon D. Wilson purchased of Thomas A. Knight the land described in the bill of complaint, except about forty-five acres. The said Knight afterwards sold the forty-five acres so reserved to one William Yelldell, but never made a deed of conveyance to him. Subsequently the said Wilson purchased frem said Yelldell the forty-five acres of land sold to him by the said Knight, " at and for the price of one thousand dollars, and executed his note for the purchase-money. The said Wilson paid the said note to Yelldell, with nine hundred and sixty dollars belonging to the complainant, and the remainder due was paid with Wilson's own money. By an agreement between Yelldell and Knight, the said Knight conveyed the said forty-five acres to Wilson.

The purchase-money agreed to be paid by Wilson to Knight for the land, exclusive of the forty-five acres,. amounted to twenty-five hundred dollars. On the 12th day of February, 1872, Wilson executed a mortgage on all the land, including the forty-five acres bought of Yelldell, to the said vendor, to secure the payment of twenty-three hundred and twenty-four dollars alleged still to be due.

On the sixth day of March, 1873, the mortgage above described was cancelled, and another was executed by Wilson to secure the payment of nineteen hundred and forty-seven dollars due by promissory note. Of this amount the bill alleged, two hundred and fifty dollars was not for the purchase-money of the land, but was to cover a balance on account of other dealings between Wilson and Knight ; and that upon this, usury was charged, as well as upon the note given for the purchase-money of the land. It denied that nineteen hundred and forty-seven dollars was due on said purchase, but averred that the said vendor had advertised. the premises for sale under the authority of the mortgage to collect this sum. The complainant also alleged that exclusive of the money invested in the forty-five acres, the sum of eleven hundred and forty-four 25-100 dollars of her statutory separate estate had been expended in permanent improve—

ments on the land conveyed by Knight to her husband ; and that the complainant had a right to have a resulting trust declared in her favor on the said land to the extent of the money of her statutory separate estate invested in the said improvements. The bill alleged that the said Knight knew that Solomon D. Wilson "was a poor man, and had no means of any considerable amount, except the said money of the statutory separate estate of the complainant."

The bill prayed for a writ of injunction to restrain Thomas A. Knight from selling the premises under the power of sale granted in said mortgage ; that a resulting trust in said land be declared and enforced in favor of the complainant, and the land be sold, and the money belonging to the statutory separate estate of the complainant invested in the land and improvements be paid to her from the proceeds of the sale.

The answer of the defendant, Solomon D. Wilson, admitted many of the allegations of the bill, and averred that the note which he first gave to Knight, for the purchase-money of the land, was signed by John H. George, as his surety. It also averred that he told Knight that he was poor, and that the money used in the purchase of the land belonged to the complainant, who had received it from her father. The answer also alleged that of the sum of twenty-three hundred and twenty-four dollars, for which the said promissory note was given, only sixteen hundred and eighty-eight 22-100 dollars, including usurious interest thereon, was for the purchase of the land ; and that the balance of the amount named in the note was for borrowed money, and merchandise and interest at the usurious rate of twelve and a half per cent. per annum.

The defendant, Knight, answering the bill of complaint, denied that he had any knowledge that the money used by Wilson in the purchase of the land belonged to the statutory separate estate of the complainant, or that it did in fact belong to her. He averred also that one John H. George signed the note mentioned in the bill as surety of Wilson ; and admitted the execution of a mortgage to him by Wilson for twenty-three hundred and twenty-four dollars, which was then legally due. This defendant admitted the cancellation of the above described mortgage on the sixth day of March, 1873, and that he took from the complainant and her husband, the said Wilson, another mortgage on that day, to secure the payment of the purchase-money for the land ; and alleged the mortgage was executed for this purpose alone.

[Wilson v. Knight.]

" He denied that there was any usury in said note dated March 6, 1873, and alleged that only eight per cent. interest for 1870 and 1871, was charged said S. D. Wilson; that about the time said mortgage of February, 1872, was executed, said Wilson applied for an extension of time for the payment of the balance due for the said land : and this defendant at first declined, because, as he told Wilson, he needed the money, and if he did not collect it, he would be compelled to pay his commission merchant at the rate of eight per cent. interest and two and a half per cent. for advancing it. Thereupon said Wilson proposed to pay this defendant the two and a half per cent., which the defendant would have to pay to his commission merchant for advancing this amount, and persuaded defendant to indulge him till he could make another crop. The same thing was repeated in March, 1873, at the time of the execution of the last mortgage, which defendant holds. So that said Wilson agreed to pay defendant two and a half per cent. commissions from February 12, 1872, to October, 1873.

This defendant also " averred, that it is not true, as alleged in said bill, that the note and mortgage which were executed on the sixth of March, 1873, by the complainant and her husband, was made on no new consideration. As heretofore alleged, one John H. George, who was solvent and responsible, became surety of said Wilson, and without such security, defendant would not have sold to said Wilson as he did. In the early part of 1872, said George became uneasy about Wilson failing to pay this defendant, and insisted on Wilson executing a mortgage to this defendant on said land to secure the balance of the purchase-money, so that in the event he paid the amount due on the note, he would have a speedy remedy by being subrogated to defendant's right under said mortgage. Wilson agreed to execute the mortgage, which was executed in February, 1872, and was received by this defendant. Afterwards, in March, 1873, said George became still more uneasy about Wilson's default of payment, and asked defendant to release him from his said obligation as surety; and on the earnest solicitation of said George, complainant, and Wilson, the defendant consented to release him, and to extend the time of payment until October 1, 1873, on the express condition that said Wilson should execute a new mortgage on all of said land, and a new note for the balance due therefor, and that complainant should join her husband in executing said note and mortgage. Thereupon said note and mortgage dated March 6, 1873, were

[Wilson v. Knight.]

executed and delivered to this defendant, and he at the same time surrendered the note upon which said George was surety, and cancelled the mortgage made in February, 1872. This was done at the earnest request, and for the accommodation of the complainant and said Wilson and said George. And defendant alleged he is an innocent purchaser of all the land described in said mortgage, and he had no notice of any claim of the complainant, if any she have."

The defendant also denied the right of the complainant to "invoke the benefit of the statute against usury for herself and husband in this case, even if the contract were usurious, which he denies."

Upon the final hearing, the court decreed that the complainant was not entitled to relief, and dismissed the bill.

GAMBLE, & BOLLING and DAVID CLOPTON, for appellant.

HERBERT & BUELL, and T. H. WATTS, for appellee.—1. Such a trust as is averred in the bill can not be created, except it results by implication or construction of law, or unless it be shown to be such "as may be transferred or extinguished by operation of law," "unless by instrument in writing, signed by the party creating or declaring the same, or by his agent or attorney lawfully authorized thereto in writing."—Revised Code, § 1590. And no such trust can defeat the title of creditors or purchasers without notice. Code, § 1591.

2. It is not pretended that there is any written instrument declaring a trust in the lands in favor of the complainant. And argument of counsel admits there is no trust by implication or construction of law, and that there is no equitable title in the lands. But it is contended there is an equitable lien thereon in favor of the wife (complainant), because a part of her statutory separate estate is invested in a part of the lands and in improvements thereon. No trust by implication or construction of law can arise, unless the money of the wife was paid at the time of the purchase, or constituted the moving cause of the title.—Perry on Trusts, p. 105, § 133; 1 Lead. Cases Eq. pp. 275, 278; Botsford v. Burr, 2 Johns. Ch. Rep. 405; 3 Ala. 302; Carleton v. Rivers, in manuscript.

3. There can be no equitable lien in the nature of a trust when the wife's money is mingled with the husband's and used in the purchase.—30 Ala. 164; 40 Ala. 518; 8 Port. 211. The husband's mutual rights are governed by the law

[Wilson v. Knight.]

of the domicil of the husband and wife at the time of the marriage, or at the time the property accrues to the wife. *Doss v. Campbell,* 19 Ala. 590. The woman's law in Alabama does not apply to separate estates created by will or deed, but only to such as do not conflict with terms of the will, deed or contract creating them—29 Ala. 528; 32 Ala. 483; 52 Ala. 456.

4. But it is insisted that Knight, having taken usurious interest, is not a *bona fide* purchaser. Now the complainant has shown no such interest in the land mortgaged as will enable her to insist on usury. To do this, she must have some title of an equitable character in the thing in controversy—or must be a defendant to a suit in which the usurious contract is sought to be enforced.—19 Ala. 753.

5. It is maintained that Knight has never lost his vendor's lien.—48 Ala. 90. The lien follows the consideration, unless an intention is shown to interrupt it.—45 Ala. 666; 2 Story Eq. §§ 1224, 1226.

MANNING, J.—Although there is evidence on the subject, it is so conflicting as not sufficiently to prove that defendant, Knight, was informed until long after the first mortgage to him, that of February, 1872, was executed, that the moneys of complainant which her husband, Sol. D. Wilson, used in paying for the mortgaged lands, were moneys of her separate estate. The lands, themselves, were not bought for, or conveyed to her.

Upon the execution of that mortgage to Knight, he took a new note from Wilson alone, for the balance, payable at a future day, which the latter owed him, for lands, (which was much the larger part of the debt,) money lent, goods sold and usurious interest, and surrendered Wilson's note for $2,500, for the lands, to which note one George, a solvent and responsible person, was a party as Wilson's surety. This note had been somewhat reduced by partial payments. We must, therefore, hold that Knight was a *bona fide* mortgagee of the lands without notice of any interest Mrs. Wilson might claim therein. All of her money which had been used in paying for them, had been paid before.

The note secured by this first mortgage, was for $2,324; and the balance of this sum reduced by partial payments, with the addition of some more usurious interest, constituted the consideration of the note for $1,947 27-100, and mortgage of the same lands, to secure it, which were executed by both Wilson and complainant, his wife, in March, 1873.

(13)

[Wilson v. Knight.]

The fact that Wilson and his wife both signed this note and mortgage, (although her signature to the note did not bind her to anything,) is relied upon as evidence in addition to that which we have regarded as previously insufficient,— of Knight's knowledge that Mrs. Wilson's money had been used in paying for the lands, or that she had some interest in them. Whether this inference is correct or not, we need not inquire. By virtue of the mortgage of 1872, Knight, as we have seen, had acquired a lien superior to her interest or equity. And this lien must be considered as continued by the second mortgage and note, and not as extinguished by them. The object of making these was, to provide for a prolongation of the time, and the making of another crop, for the payment of the debt.

It follows that the right asserted by complainant can not be maintained, unless Knight's title is invalidated or impaired by the usury in the transactions.

It is clear beyond any doubt, that a large part of the land and all of the improvements on it were paid for with money of Mrs. Wilson's separate estate by her husband who was trustee óf the same. This gave her a right higher than that of a mere creditor. Against her husband and any one who was not a *bona fide* purchaser from him, she was entitled to follow the trust moneys into the land, and to have it charged with a lien for their repayment. To what extent was Knight a *bona fide* purchaser or mortgagee? Ought equity to protect him as such, in regard to that part of his claim which arose out of a violation of law?

Our statutes do not as formerly they did, as well as those of other States, denounce as wholly void, an usurious contract for the loan of money, or for the forbearance to collect money due. They make it void only for all over and above the principal sum. That is a *bona fide* credit, and may be sued for and recovered according to law. And it seems to me that according to the principles of equity-law—and in a court of chancery, Knight should not be allowed to recover out of the land in controversy against the older equity of Mrs. Wilson, a *cestui que trust*, whose money had been put by her trustee into this land,—any more than the principal of his debt amounted to when usury began to be stipulated for and charged.—See *Wells v. Morrow*, 38 Ala. pp. 129-30; Perry on Trusts, §§ 836, 842.

But the courts generally, and this court especially, have so constantly held that the defence of usury was a personal privilege, and could not be set up by any person but the

[Mitchell v. McCullough.]

·debtor, or his personal representative, or his sureties,—that it is thought Mrs. Wilson cannot be allowed to make that ·objection. I, therefore, yield reluctantly, and without elaboration, a view that I consider more in accordance with the principles by which courts of equity are usually guided.

Let the decree of the chancellor be affirmed.

STONE, J., not sitting.