(103 N. W. 626.)

---

WILLIAM C. HAGLER v. FANNIE E. KELLY AND WILLIAM A. MARIN.

Opinion filed May 10, 1905.

**Judgment — Entry.**

1. In 1892, following the irregular practice which then generally prevailed in this jurisdiction with respect to the manner of entering judgment in the district court, an order for judgment, which embodied the final determination of the action made by the trial court, and was in the form required for a judgment, but concluded with the direction to enter judgment, signed by the judge and attested by the clerk, was recorded in full in the judgment book, where it was again signed by the judge and clerk. *Held,* that such record is a valid judgment.

**Taxation.**

2. Where judgment was obtained and docketed for personal property taxes pursuant to the provisions of sections 57 and 58, c. 132, pp. 398, 399, Laws 1890, and became a lien upon the property in question before the Revised Codes of 1895 took effect, such lien continued notwithstanding the repeal of the law under which the lien was acquired. Gull River Lumber Co. v. Lee, 73 N. W. 430, 7 N. D. 135, overruled.

**County Commissioners — Assignment of Judgment.**

3. The board of county commissioners has power to sell and assign a judgment obtained for personal property taxes under the general revenue law of 1890.

**County Commissioners — Assignment of Judgment.**

4. The board of county commissioners may sell and assign such judgment for less than the amount due thereon if the transaction is free from fraud or other illegality.

Appeal from District Court, Nelson county; *Fisk,* J.

Action by William C. Hagler against Fannie E. Kelly and William A. Marin.   Judgment for plaintiff and defendants appeal.

Affirmed.

*Tracy R. Bangs* and *W. J. Meyer,* for appellant.

In this state, when order for the entry of a judgment is given, it is the duty of the clerk, under section 5095, to enter judgment in the judgment book and then place a copy of said judgment in the roll. In re Weber, 4 N. D. 119, 59 N. W. 523.

A judgment cannot be entered without an order of the court. In re Weber, supra; Gould v. Duluth & D. Elevator Co., 54 N. W. 316.

There is a difference between an order for a judgment and a judgment. McTavish v. Gt. N. R. R. Co., 8 N. D. 94, 79 N. W. 443; Black on Judgments, section 115.

The vitality of a tax lien being dependent upon the law of 1890, its repeal without reservation, prior to any disposition of the tax by the state or its corporate agencies, destroyed the lien. A lien is a creature of statute, and its extent and operation is fixed by law. 17 Am. & Eng. Enc. Law, 770; Gull River Lumber Co. v. Brock and Lee, 6 N. D. 135, 73 N. W. 430.

A county, through its board of county commissioners, can make no disposition of a tax judgment. It has only the powers expressly granted by words of the statute or the constitution, or are incident to such powers. 1 Am. & Eng. Enc. Law, 426; Shally v. Lash, 14 Minn. 498; James v. Wilde, 25 Minn. 305; Black on Tax Titles, section 153.

A county can enforce the collection of a judgment, but not barter away or compromise it, when against parties not shown to be insolvent. State v. Davis, 75 N. W. 897.

A county is but the agent of the state, as townships, cities and school districts. An agent authorized to collect a claim has no power to sell or compromise it. 1 Am. & Eng. Enc. Law, 1030; Smith v. Johnson, 71 Mo. 382; Bank v. Davis, 14 N. J. Eq. 286; Rodgers v. Bur., 46 Tex. 505; Mallory v. Martiner, 15 Wis. 172.

Unless taxes are expressly or impliedly authorized to be assigned, they are incapable of assignment, and no one can be subrogated to the rights and remedies of the state or municipality. 27 Am. & Eng. Enc. Law (2d Ed.) 380; McInery v. Reed, 23 Iowa, 410.

The remedy provided by statute for the enforcement of taxes is exclusive. Brule County v. King, 77 N. W. 107; McHenry County et al. v. Kidder County, 79 N. W. 875, 8 N. D. 413.

Taxes are not debts and are not assignable. Brule County v. King, 77 N. W. 107.

*Scott Rex,* for respondent. .

The judgment under which the sale was made was valid. In re Weber, 4 N. D. 119. The instrument under consideration was an order for dismissal, not signed or attested by the clerk, nor entered in the judgment book. McTavish v. Gt. N. R. R. Co., 8 N. D. 333.

The word "render" instead of "enter" was used, and the judgment failed to provide that plaintiff recover a specified amount. The law of 1890 provided for the entry of a "judgment." In State v. Red River Valley El. Co., 69 Minn. 131, the court says: "This proceeding is in the nature of a personal action." An appeal from a judgment entered in such a proceeding was entertained in State v. Rand. 30 Minn. 502; Collins v. Welch et al., 12 N. W. 121.

The tax ceased to exist upon the entry of the judgment in which it merged. A final determination by judgment or sentence is a vested right, and therefore unaffected by the subsequent repeal of the statute upon which it depends. 23 Am. & Eng. Enc. Law (1st Ed.) 573; Osborne v. Sutton, 108 Ind. 443.

It has been the policy of the state to vest county boards with ample powers. They can place taxes on the list of uncollectible taxes. Comp. Codes, 1616, section 1243; Rev. Codes 1895, section 61, ch. 126, Laws 1897. They can cancel taxes when uncollectible. Laws 1890, ch. 132, section 56. They can abate. Laws 1891, ch. 120. Can compromise. Laws of 1897, ch. 126, section 59.

Having put the tax into a judgment, the board did not lose its power and control over it except to require its payment in full. The county board has the same power as to cancellation, abatement, etc., over city, town, school and state taxes as county taxes.

The county has the power to sell debts, judgments and other evidences of debt. Brown County v. Jenkins et al., 77 N. W. 579; State v. Davis et al., 75 N. W. 897; Collins v. Welch et al., 43 Am. Rep. 111, 12 N. W. 121; Hall v. Baker, 42 N. W. 104; Washburn County v. Thompson et al., 99 Wis. 585, 75 N. W. 309; State et al. v. Martin (Neb.) 43 N. W. 244; Agnew et al. v. Brall, 124 Ill. 312, 16 N. E. 230; Prest v. Mappin, 14 Ill. 193; Supervisors v. Birdsall, 4 Wend. 454; Railway Co. v. Anthony, 73 Mo. 431; Board v. Bowen, 4 Lans. 31; Prout v. Inhabitants, 154 Mass. 450.

The personal property tax judgment was a right accrued within the meaning of section 2686, Rev. Codes 1895; 26 Am. & Eng. Enc.

Law, 746; Wright Lumber Co. v. Hixon et al., 80 N. W. 1110; Smith. v. Kelly, 33 Pac. 642; Louisville Water Co. v. Com., 34 S. W. 1064; People v. N. Y. R. Co., 156 N. Y. 570; Oakland v. Whipple et al., 44 Cal. 303; U. S. v. Iselin, 87 Fed. 194; U. S. v. Burr et al., 159 U. S. 78, 15 Sup. Ct. Rep. 1002; Bruce County v. Cook et al., 35 N. E. 992; Danforth v. McCook County et al., 76 N. W. 940; Commonwealth Appeal, 128 Pa. St. 603.

In case of the amendment or revision of the tax laws, the presumption is very strong that the legislature did not intend to cancel outstanding tax obligations. Cooley on Taxation, 499, 22; Alliance Trust Co. v. Multnomah County, 63 Pa. 496; Wells County v. McHenry County et al., 7 N. D. 246, 74 N. W. 241.

The tax in question was put in judgment and could be collected only under the former laws. Greensborough v. McAdoo, 112 N. C. 359; In re Munn, 165 N. Y. 149; Oakland v. Whipple, 44 Cal. 303; Louisville Water Co. v. Commonwealth, 34 S. W. 1064; State v. Bank, 68 Mo. 515.

ENGERUD, J. Plaintiff, claiming to be the owner in fee of the quarter section of land in controversy, situated in Nelson county, brought this action to quiet title. The complaint is in the statutory form provided by chapter 5, p. 9, Laws 1901. The defendant Fanny E. Kelly answered, alleging title in fee by virtue of a deed from Charles W. Tanner. The defendant William A. Marin, in his answer, claims to have a lien upon the land as assignee of a judgment rendered and docketed against Tanner in favor of Walter A. Wood Mowing & Reaping Machine Company. There was a trial by the court without a jury, and judgment was ordered and entered adjudging that plaintiff was the owner in fee, and quieting his title against the defendants. The defendants appealed from the judgment, and demand a trial de novo of all the issues.

Charles W. Tanner owned the land in fee in 1890, and until Fanny E. Kelly succeeded to his rights under a deed from him executed in 1901, and she now owns the land in fee subject to the lien of the judgment owned by Marin, unless the plaintiff acquired title by the execution sale hereinafter discussed. Personal property taxes for the year 1890 were imposed upon Charles W. Tanner pursuant to the 1890 revenue law (chapter 132, p. 376, Laws 1890). Tanner having failed to pay them, proceedings were instituted against him under the provisions of section 57 of that act

to obtain a judgment against him therefor. The citation was issued and personal service obtained, and on June 21, 1892, judgment by default was taken in the district court of Nelson county for the tax, interest, penalties and costs, aggregating $25.46. The judgment was duly docketed the same day. In April, 1897, the plaintiff purchased this tax judgment from the county, and a formal assignment thereof to him was executed in behalf of the county by the chairman of the board of county commissioners. The then state's attorney, at the request of Mr. Hagler, immediately caused an execution to be issued on said judgment. Pursuant to that writ the sheriff levied upon and sold the land in question to Mr. Hagler for $49.25, and delivered to him a certificate of sale in due form, dated May 25, 1897. The sale was reported to and approved by the district court. No redemption having been made from such sale, the plaintiff received a sheriff's deed of the land in due form, dated June 23, 1898. Upon this sheriff's deed the plaintiff bases his claim of title. The validity of that deed is attacked by the appellants upon three grounds. The appellants contend, first, that there never was any judgment rendered or entered in the district court for the personal property taxes; second, that, even if there was a judgment, such judgment ceased to be a lien on the land on January 1, 1896, when the Revised Codes of 1895 took effect, repealing the provisions of the 1890 revenue law, by force of which the judgment became a lien; third, that the purported sale and assignment of said judgment to the plaintiff by the board of county commissioners was an ultra vires act, and void. We shall dispose of these propositions in the order in which they are stated.

1. The point that there never was any judgment rendered and entered is based on the fact that the judgment upon which the plaintiff relies is a mere copy of the order for judgment recorded in the judgment book. The order for judgment was attached to the judgment roll, was properly entitled, and after the proper recitals continued as follows: "Now, on motion of W. H. Standish, plaintiff's attorney, it is hereby adjudged that the county of Nelson, the plaintiff, recover of Charles W. Tanner, the defendant, the sum of twenty dollars and fifty-one cents, and four dollars and ninety-five cents costs and disbursements, amounting in the whole to twenty five dollars and forty-six cents. And the clerk of court is hereby directed to enter judgment accordingly." This order

was copied literally and in full into the judgment book kept by the clerk of said court, where it was again signed by the presiding judge, and attested by the clerk, and the seal of the court impressed thereon. We think this must be held to be a sufficient judgment. Excluding from the order the final sentence directing the clerk to enter judgment, it will be seen that the entry in the judgment book is a perfect form for a judgment. The fact that the judge signed it and the clerk attested the signature does not destroy its effect as a judgment, if it is otherwise sufficient. If the final sentence were omitted from the entry in the judgment book, the appellants' objection to the sufficiency of the entry to constitute a judgment would be squarely met by the decision of this court in Cameron v. Ry. Co., 8 N. D. 124, 77 N. W. 1016. Appellants, however, assert that the final sentence shows that further action was contemplated, and that the recording of this order in the judgment book did not, therefore, "purport to be the final act in the case." They rely upon McTavish v. Ry. Co., 8 N. D. 333, 79 N. W. 443. In that case the question was whether the right to appeal was barred. A previous appeal had been dismissed, with leave to prosecute a second appeal upon condition that the appellant should comply with certain terms imposed. It was discovered that the supposed judgment from which the former appeal had been taken was merely a copy of the order for judgment recorded in the judgment book by the clerk. Moreover, the order for judgment was not drawn in such form as to serve as a judgment. Upon discovering this abortive attempt to enter judgment, the appellant asserted that the first appeal was a nullity, and consequently claimed the right to appeal unconditionally from the judgment subsequently properly entered. The situation with which the court was dealing on the appeal in that case was the same as that which existed in the trial court when the irregularity in question was discovered. The transaction was fresh, and the litigation still in actual progress. It will be readily seen that under such circumstances the propriety and sufficiency of the acts of the clerk to accomplish the intended purpose were to be tested by an entirely different standard from that which must be applied in the case at bar. That case simply involved a question of practice in a pending litigation. In this case we are dealing with rights to property of long standing, acquired or supposed to have been acquired through legal proceedings. Those proceedings are at-

tacked for irregularity of procedure of a purely formal nature which neither denied nor prejudiced any substantial right of any adverse party. Moreover, the procedure followed, although now known to be irregular, was, at the time the transaction took place, very generally considered proper practice. As said by Chief Justice Bartholomew in Rolette County v. Pierce County, 8 N. D. 613, 614, 80 N. W. 804: "All the members of this court know that under the late territorial practice it was a very common matter to draw a paper in form a judgment such as the court desired, and have it signed by the judge. This paper was treated as the judgment, and its subsequent entry by the clerk in the judgment book was regarded as a perfunctory matter. This practice, as this court has repeatedly held, was a misconception of the statute. But the practice prevailed with many practitioners of good standing." Every lawyer familiar with the practice in this jurisdiction in 1892 knows that most, if not all, of the members of the profession in this state at that time would have considered the record of this order in the judgment book to be a perfectly valid judgment. There are doubtless many titles resting upon such judgments. We ought not at this late day declare such judgments invalid for a mere technical irregularity of practice, if that result can be avoided without violating established legal principles. We do not think we are violating any rule of law in holding that the record in this case shows a valid judgment for the personal property tax. The decision of the court fixing the amount of recovery is clearly expressed. That decision is entered in the official record, which was devoted to no other use than the recording of the judgments of the court. Bearing in mind the practice then prevailing, we know that it was considered by the officers of the court and by the public generally to be a judgment, and was so intended; and we also know that, notwithstanding the final sentence, it did in fact purport to be the final act in the case, and did not in fact contemplate further judicial action. We think the document should be taken to be what in fact to all intents and purposes it was intended and generally supposed to be. Under these circumstances we are of the opinion that the final sentence should be treated as surplusage.

2. The judgment was docketed June 21, 1892, and under the provisions of section 57, 58, chapter 132, pp. 398, 399, Laws 1890, became a lien upon the land in question, enforceable by execution to be issued at the request of the state's attorney. That law

was repealed by the Revised Codes of 1895, which went into effect January 1, 1896. Counsel for appellant assert that the repeal of the law by virtue of which the judgment became a lien destroyed the lien. They cite Gull River Lumber Co. v. Lee, 7 N. D. 135, 73 N. W. 430, which supports that proposition. This court there held that the repeal of the 1890 revenue law by the Revised Codes of 1895 destroyed the lien upon personal property which had accrued under the repealed law. In the consideration of that case the court overlooked section 2686 of the Revised Codes of 1899, which reads as follows: " No action or proceeding commenced before this Code takes effect, and no right accrued, is affected by its provisions, but the proceedings therein must conform to the requirements of this Code as far as applicable." The tax was levied and the judgment entered and docketed while the 1890 revenue law was in force. A lien was thereby fastened upon the land, enforceable by execution. In the opinion of the chief justice and the writer, that lien was clearly a "right accrued," which, by the express provisions of section 2686, was not affected by the repeal of the law under which it had been acquired. Lumber Co. v. Hixon, 105 Wis. 153, 80 N. W. 1110, 1135; Smith v. Kelly, 24 Ore. 464, 33 Pac. 642; Water Co. v. Commonwealth (Ky.) 34 S. W. 1064; People v. Ry. Co., 156 N. Y. 570, 51 N. E. 312; Oakland v. Whipple, 44 Cal. 303; Bruce v. Cook (Ind. Sup.) 35 N. E. 992; Danforth v. McCook Co., 11 S. D. 258, 76 N. W. 940, 74 Am. St. Rep. 808; State v. Bank, 68 Me. 515; 24 Am. & Eng. Enc. Law (2d Ed.) p. 746. The majority of the court therefore hold, notwithstanding the views expressed in Lumber Co. v. Lee, that the lien of this tax judgment was not destroyed by the repeal of the law under which the lien was acquired. Justice Young, however, declines to express any opinion on this point.

3. The validity of the sale and assignment of the judgment by the county to the plaintiff is attacked solely on the ground of absence of power in the board of county commissioners to dispose of the judgment. The honesty and fairness of the transaction are not questioned. The appellant denies the existence of any power in the board of county commissioners to either compromise or assign the judgment for personal property taxes under any circumstances. Section 1907, Rev. Codes 1899, vests in the board of county commissioners the general management of the fiscal affairs of the county. Throughout all the changes of the laws relating

to revenue and taxation in this state, the board of county commissioners has always been vested with the power to abate or cancel general taxes, if found to be wholly or partly unenforceable. Comp. Laws 1887, section 1616; Laws 1890, p. 398, c. 132, section 56; Rev. Codes 1895, section 1243; Laws 1897, pp. 279, 280, c. 126, sections 59, 61. This power exists not only as to taxes for county purposes, but also as to those levied for state, township and school purposes. Under all the revenue laws that have been in force in this state the officers of the county have been charged with the duty of collecting all general taxes upon property within its boundaries, and the general supervision of such collection has always been vested in the board of county commissioners. It is a matter of general knowledge that the county commissioners have uniformly exercised the power to adjust and compromise taxes where the collection of them was doubtful. It must be conceded that the board had power to abate or compromise taxes where the collection of them was doubtful. It must be conceded that the board had the power to abate or compromise the tax which became merged in this judgment if, in the fair exercise of its discretion, such action was advisable. Collins v. Welch, 58 Iowa, 72, 12 N. W. 121, 43 Am. Rep. 111; State v. Davis, 11 S. D. 111, 75 N. W. 897, 74 Am. St. Rep. 780. It is clear that this same power continued after the judgment was obtained. The duty of the county commissioners with respect to the collection of the taxes merged in this judgment was the same after as before the entry of the judgment. If they had the power to abate or compromise the claim, we can conceive of no valid objection to their right to effect the same result by selling the claim. No right of the debtor, or of any party interested in the land upon which the judgment was a lien, was impaired or prejudiced. The amount of the judgment and the manner of enforcing it remained exactly as before. The state, county, township and school district received exactly what they would have received had the claim been compromised by accepting the same amount in payment. While we have found no statute specifically conferring upon the board the power to sell such a judgment, neither have we found any law denying the existence of such power. The board has general power to manage the county business, and has power to sell and dispose of its property. The board is also charged with the duty of superintending the collection of all general taxes, and to abate and compromise the

same when the circumstances warrant such action. If a sale of a tax judgment, either for the full amount or less than the full amount, becomes advisable in order to secure the money due for taxes, we think the board has power to adopt that means of obtaining the money. The facts of this case distinguish it from those cases cited by appellant to the effect that a tax cannot be the subject of sale or assignment. McInery v. Reed, 23 Iowa, 410; Hinchman v. Morris (W. Va.) 2 S. E. 863. Assignability is denied because the tax or assessment is not a debt, and because the statutory remedies for enforcing the statutory obligation are exclusively confined to such proceedings as the legislature has devised, and which are of such a nature that the public officials charged with that duty could alone institute and conduct them. Neither of these reasons applies to the judgment in question. The personal property tax, after being placed in judgment, becomes an incontestable evidence of a personal liability of the taxpayer collectible by the ordinary writ of execution out of the debtor's real or personal property. The tax became a judgment enforceable by the same process, by the same officer, and in the same manner as any other judgment of the same court. We are unable to conceive why such judgment should not possess the same attributes, including that of assignability, as any other judgment.

It is finally urged that the county authorities were mere collecting agents, and hence had no authority to sell or compromise the judgment without the consent of the state, township and school district, each of which were part owners thereof. The state, township and school district were not joint owners with the county of this judgment. The relation of the county to the other governmental agencies with respect to this tax judgment is more analogous to that of a trustee clothed with the title to the trust property and vested with discretionary powers to dispose of the subject matter of the trust for the benefit of the beneficiaries.

We have stated all the facts we deem material to this decision. They are all established by uncontroverted documentary evidence. Upon these facts we reach the same conclusion as the trial court, and the judgment is affirmed. All concur.